# Lee, Appellant, v. Commonwealth Trust Company.

*Contracts—Sales of stock—Formation of holding company—Insolvency of holding company—Bill in equity for surrender of shares—Estoppel.*

In a suit in equity to compel the surrender of certain shares of telephone stock, it appeared that the stock had been transferred by plaintiff's decedent to the promotor of a holding company under an agreement restricting the manner in which it should be transferred by such promoter and providing for the payment therefor in a certain way; that the stock was transferred to the holding company by the promoter in a manner not contemplated by the agreement although with the acquiescence of plaintiff's decedent, and that payment therefor was made to plaintiff's decedent in stock of the holding company. The stock so transferred was subsequently mortgaged by the holding company together with other property, and plaintiff's decedent received two dividends on the stock of the holding company. The holding company became insolvent and its property was sold under the mortgage; plaintiff contended that he was entitled to a return of the stock because it had been acquired by the holding company in violation of the terms of the agreement between his decedent and the promoter. The lower court dismissed the bill. *Held,* that as plaintiff's decedent had acquiesced in the transfer of his stock to the holding company, and had accepted stock in payment therefor, upon which he had received dividends, he had estopped himself from complaining of the violation of the agreement, and the decree was affirmed.

Argued Oct. 28, 1915.    Appeal, No. 193, Oct. T., 1915, by plaintiff, from decree of C. P. Allegheny Co.; Oct. T., 1912, No. 1462, dismissing bill in equity in case of C. C. Lee, Executor of the Estate of Robert C. Hall, Deceased, v. Commonwealth Trust Company, a corporation of the State of Pennsylvania, Trustee; John A. Howard, S. W. Harper, W. C. Handlan, John L. Dickey, A. S. List, Thomas O'Brien, J. N. Vance, J. M. Brown, George E. Stifel, Lawrence E. Sands, Z. F. Robertson, Joseph Speidel, John A. Hess and the National Telephone Corporation, a corporation of the State of West Virginia, Pittsburgh & Allegheny Telephone Company, a corporation

under the laws of the State of Pennsylvania, and William Flinn and Joshua G. Splane, Receivers of the said Pittsburgh & Allegheny Telephone Company, and J. H. Vercoe, Trustee. Before BROWN, C. J., MESTREZAT, POTTER, MOSCHZISKER and FRAZER, JJ. Affirmed.

Bill in equity to compel the surrender of certain shares of stock and for an injunction restraining their transfer to third persons. Before SHAFER, J.

The opinion of the Supreme Court states the case.

The court on final hearing dismissed the bill. Plaintiff appealed.

*Error assigned* was the decree of the court.

*John M. Freeman,* of *Watson & Freeman,* with him *Osborne Mitchell* and *H. F. Stambaugh,* for appellant.— The syndicate agreement was a partnership agreement subjecting the signers to partnership liability: Ricker v. American Loan & Trust Co., 140 Mass. 346; Babb v. Rea, 5 Rawle 551; Gibbs's Est., 157 Pa. 59.

The acceptance of shares of the syndicate company in payment did not operate as an estoppel against plaintiff's decedent.

The right of plaintiff's decedent to recover the trustees' shares is not affected by the rights of bona fide purchasers of bonds issued by the syndicate: McElrath v. Pittsburgh & Steubenville R. R. Co., 68 Pa. 37; Commonwealth v. Susquehanna & Delaware R. R. Co., 122 Pa. 306; and the burden is on defendant to show that it represented a bona fide purchaser for value: Neff v. Landis, 110 Pa. 204; Levy v. Cooke, 143 Pa. 607.

*John S. Weller,* with him *T. S. Riley, John J. Coniff* and *J. B. Handlan,* for appellees.—There is no proof of fraud or unfair dealings between Howard and Hall: Campbell v. Patterson, 95 Pa. 447; Smith v. Ewing, 151 Pa. 256; Mead v. Conroe, 113 Pa. 220.

The so-called underwriting syndicate agreement was not a partnership agreement: Downey v. Finucane, 250 N. Y. 51.

Plaintiff's decedent is estopped by his conduct from asserting a right to the shares in question.

OPINION BY MR. JUSTICE FRAZER, January 3, 1916:

Plaintiff appeals from a decree of the Court of Common Pleas of Allegheny County dismissing a bill brought to compel the surrender of certain shares of capital stock and for an injunction restraining their transfer to third persons on the ground that defendants fraudulently acted concerning their disposal in violation of an express agreement with plaintiff.

In 1909, John A. Howard, S. W. Harper and W. C. Handlan, three of defendants, undertook the task of consolidating a number of independent telephone companies doing business in the States of West Virginia, Ohio and Pennsylvania. Their plan involved the acquisition of a controlling interest in the capital stock of more than eleven companies, which stock was to be held by a company to be organized under the name of the National Telephone Corporation. For the purpose of carrying out this plan, a syndicate was formed by an agreement executed in 1909 between Howard, Harper and Handlan as parties of the first part and ten other persons designated as parties of the second part. It was provided inter alia that the new company should issue bonds to the amount of ten million dollars, which were to be secured by the capital stock of the various companies to be consolidated and the proceeds of the sale of such bonds used to pay for the stock and liquidate the indebtedness of the various companies taken over and furnish money for the general purposes of the business. The parties to the syndicate agreement each agreed to pay to the person chosen to act as treasurer the sum of $21,250.00, which fund was required immediately to acquire the stock of certain of the companies. In return

for the cash so advanced, each contributor was to receive bonds to the amount of $25,000.00 to be subsequently issued and also as a bonus a certain amount of the preferred and common stock of the new corporation. The plans of the syndicate included the control of the Pittsburgh and Allegheny Telephone Company in which Robert C. Hall, plaintiff's decedent, owned a controlling interest. A large part of his stock in this company, however, was held by various banks as collateral for loans made to him and in order to secure possession of this stock the syndicate was obliged to provide a sufficient fund to cancel the indebtedness. Howard entered into negotiations with Hall which finally resulted in an offer by the latter to sell to the former 4,500 shares of the preferred stock of the Pittsburgh and Allegheny Telephone Company at $100.00 per share and 10,500 shares of the common stock at $20.00 a share, making a total consideration of $660,000.00, payable $10,000.00 at the time the offer was accepted, the assuming by Howard of responsibility of five notes of Hall amounting to $453,704.53, and the balance in cash or negotiable paper, payable at a future date. At the same time Hall also agreed by separate writing to deliver to Howard 4,173 additional shares of the preferred stock and 1,378 shares of the common stock of the Pittsburgh and Allegheny Telephone Company, giving the latter power to "exchange the said stock for bonds or preferred stock of a proposed new holding company in which it is proposed to merge the said Pittsburgh and Allegheny Telephone Company," also power "to decide and determine all questions incident to making such exchange including terms, price, character of new company and kind of security." The sole condition attached to this power was that in making the exchange Howard was to "get the same terms and price for the stock deposited with him......as he gets for the stock he has this day purchased."

Plaintiff's action is based on the allegation that this part of the agreement was not carried out by Howard

and that he in fact received cash for the stock which he purchased from Hall, whereas Hall's stock was transferred to the consolidated company in exchange for the preferred stock of that corporation, which stock subsequently became worthless by reason of the insolvency of the company.

The agreement made by Howard for the purchase of 15,000 shares of the capital stock of the Pittsburgh and Allegheny Telephone Company from Hall and also the other agreement referred to above, were assigned to the National Telephone Corporation, which company assumed all the liabilities of Howard under the contracts. Howard received no benefit and made no profit thereon, the transaction being merely a part of the consolidation scheme in which he acted as promoter, and of which Hall had full knowledge. No part of the consideration was at any time paid by Howard to Hall but on May 8, 1909, a check for $10,000.00 on account was given him by the syndicate treasurer; on May 20th, a like check for $26,395.47 was given and on the same date, notes for $170,000.00 of one of the companies to be consolidated were given to Hall as further payment. The several other notes of Hall's, which were outstanding, and for which his stock was pledged as collateral to various banks and trust companies, were also assumed by the syndicate. In a number of cases the new company substituted its own notes for those of Hall, but two notes, one for $200,000.00 and another for $72,000.00, were given to Hall and endorsed by him, that being the only condition on which the bank would surrender the old note and release the stock. Part of the relief asked for by plaintiff in his bill, is that he be released from liability on these two notes.

Each transaction in regard to the payment of stock bought by Howard was between Hall and the syndicate, and all payments were made direct to Hall, the parties treating the transaction as if the agreement had been made direct between Hall and the syndicate. Hall then

received for the stock originally sold to Howard a considerable part in cash or its equivalent, while for the stock held by Howard under the agreement, he received, in exchange, preferred stock of the new company.

In 1909, the National Telephone Corporation executed a mortgage which was a lien on all the stock of the various companies held by the consolidated company, including the shares of the companies received from Hall. Later in the same year, Hall received 2,500 shares of the preferred stock of the new company, and, in 1910, 1,000 additional shares of that company, and on this stock he received two dividends. In July, 1910, receivers were appointed for the National Telephone Corporation by the United States District Court of West Virginia, whereupon, Hall tendered back his stock of that company and demanded a return of his Pittsburgh and Allegheny shares, which was refused. This latter stock was subsequently sold under foreclosure proceedings on the mortgage given by the National Telephone Corporation and purchased by J. H. Vercoe, who previous to the sale was given notice of the plaintiff's claim and subsequent to purchasing the stock was made a party to the bill. Having filed no answer a decree pro confesso was entered against him. No final order has been entered on that decree, consequently that matter is not before the court on this appeal. The court dismissed the bill as to the other defendants.

The court below found as a fact that Hall was aware that the 5,500 shares, which Howard agreed to dispose of for him, were transferred to the new company and placed under the lien of the general mortgage given by that company, and, with this knowledge, he received a part of the consideration for the stock. The court also found Hall was cognizant of the turning over by Howard of his contract for the purchase of the 15,000 shares of Pittsburgh and Allegheny Company stock to the new company. In fact, it is not disputed that Hall was aware that the new company had assumed liability there

for and that such transfer was the very purpose of the transaction. Plaintiff's contention is, that the transfer by Howard of his agreement to purchase the 15,000 shares was in effect a sale by him of all of his stock at par and for cash, and that, therefore, Hall was entitled to receive the same price for his stock. This argument, however, carried to its logical conclusion, would put Hall in the position of having received double consideration for the stock sold to Howard; that is, full consideration from Howard and a second consideration from the new company, which latter he does not deny having received. This result in itself seems conclusive evidence that Hall understood his agreement with Howard was intended to be transferred to the new company, by and for whose benefit the parties both contemplated it would be carried out. Howard was not a purchaser but merely an intermediary whose acts were fully ratified by all parties concerned. Consequently, even assuming Hall might have insisted upon the transfer of the stock deposited with Howard on the same terms and conditions as the 15,000 shares, yet, having acted with full knowledge of the facts and acquiesced in the arrangements made by Howard, and having accepted the new stock and subsequently received dividends thereon without complaint, until he discovered the new company was in an insolvent condition, he is now estopped from repudiating the transactions carried out for their mutual benefit.

Under this view of the case, it is unnecessary to discuss the question of whether a partnership existed among defendants.

The decree is affirmed at appellant's costs.